The City of Newark owned tax sale certificate No. 16486, dated June 27th, 1932, covering a parcel of land situate on the edge of the meadows and containing 23.15 acres. The *Page 472 
city's records of tax title liens and real estate taxes, under a much later date, November 29th, 1940, show the land mentioned in the certificate divided into four lots and the lien of the certificate and subsequent taxes apportioned among them. One of the four lots is known as Lot No. 50 in Block 5088. In 1945, the city held a public sale of tax sale certificates. One of the offerings was described in the notice of sale and at the sale as follows:
Block 5088, Lot 50. Certificate No. 16486. Due on face amount of certificate, including interest and costs to date of sale, $374.95. Due on subsequent liens to December 31, 1944, including interest and costs to date of sale, $6,550.59. Total amount required for redemption, $6,925.54.
The several sums stated were the amounts which had been allocated to Lot 50, and not the whole amount due on certificate 16486 and the 23.15 acres. The defendant, Guarino Lodato, was the highest bidder at $2,100. The sale to him was confirmed by the city commission, and an assignment duly executed in behalf of the city was delivered to him. What the city sold and Lodato bought, or what they intended to sell and buy, was the city's title and lien on Lot 50 and no more. But the language of the assignment is not clear. It purports to transfer all the city's "right, title, interest, property and estate in and to a certain certificate of tax sale No. 16486, dated June 27th, 1932, owned by the City of Newark, N.J., covering the lands and premises known and designated as Block No. 5088, Lot No. 50."
Lodato, last April, instituted suit in Chancery to foreclose his tax lien. In his bill, he describes by metes and bounds Lot No. 50 and not the whole tract of 23.15 acres. Any decree in that cause will bar redemption of only the lands described in the bill. R.S. 54:5-104.
The city sues on the theory that, by a mutual mistake, it transferred to Lodato its interest in the entire tract and it prays that the sale be rescinded, and the assignment canceled, and that prosecution of the foreclosure suit be enjoined. Lodato, however, asserts a title to Lot 50 only, and disclaims any interest in the rest of the large parcel. He denies that *Page 473 
there was a mistake in the public sale and confirmation, and he is willing that the assignment be reformed so as to make clear what he purchased.
The city says that it did not sell its interest in Lot 50 only, for it was unable to do so, inasmuch as there had been no actual apportionment of the lien among the several lots. While there is no direct proof of apportionment by resolution of the governing body of the city pursuant to R.S. 54:7-4, or by a municipal officer designated under R.S. 54:7-7, there is also an absence of satisfactory evidence that there was no such action. The city's records of tax liens and the official tax search on Lot No. 50 indicate an apportionment and permit the inference that the apportionment was effected by some proper method. Furthermore, one of the lots into which the 23.15 acres had been divided in 1940, was again divided and the lien which had been set off to that lot was apportioned among its subdivisions by resolution of the city commission June 4th, 1941. This action was based on the supposition that there had theretofore been a due apportionment of the liens on the 23.15-acre parcel. In a suit for rescission and cancellation, the complainant has the burden of showing convincingly the facts on which he relies for relief.12 C.J.S. 1060. In the present state of the proofs, I cannot find that there was no valid apportionment.
Now comes the question whether the statute under which the city conducted the sale of tax sale certificates, P.L. 1943 p. 425, known also as R.S. 54:5-114.2 et seq., authorizes the sale of such an interest in a certificate as transfers title to a part of the land and lien evidenced by a certificate. Let us first notice that chapter 7 of our statute, relating to apportionment, expressly permits the apportionment of "the claim of the municipality under a sale for the enforcement of taxes or other municipal liens or charges." R.S. 54:7-2. This is the lien evidenced by a tax sale certificate. Weber v. Keller, 117 N.J. Eq. 17; Irvington v. Ollemar, 128 N.J. Eq. 402; 131 N.J. Eq. 189; Trenton v. Howell, 132 N.J. Eq. 51, all relate to apportionment after the issuance of a certificate. The statute, however, nowhere prescribes the results of an apportionment but leaves them to be worked out by the courts. *Page 474 
Indeed, outside of chapter 7, apportionment seems to be entirely ignored. For instance, the statute directs the redemption money to be paid to the purchaser only on his surrender of the certificate of sale. R.S. 54:5-57. And at the option of the person redeeming, the certificate of sale receipted for cancellation shall be delivered to him. R.S. 54:5-55. When redemption is made by a person not primarily liable, he may demand an assignment of the certificate. R.S. 54:5-56. It is evident that these statutory provisions cannot be literally followed when part only of the land is redeemed, and that a court dealing with that situation must seek the legislative purpose and apply it to the facts.
Similarly, article 11 of chapter 5, authorizing municipalities to dispose of tax sale certificates, does not mention the situation where the land described in a certificate had been divided and the lien allocated to the several lots. The interpretation of the article, and particularly R.S. 54:5-114.2et seq., depends upon the nature of the subject-matter and the object which the legislature sought to accomplish. A tax sale certificate is a conveyance of the land, subject to redemption.R.S. 54:5-32. Kurzius v. Hillside Land Co., 112 N.J. Eq. 466.
It is also an assignment of the tax lien. R.S. 54:5-42. Each certificate should cover only such property as is assessed as one parcel. R.S. 54:5-49. Upon a subsequent division of the land into several lots and an apportionment of the lien, the rights of the holder of the certificate and of persons who are entitled to redeem are the same as if several certificates had been issued instead of one. The owner of one lot may redeem and demand a release of that lot; a mortgagee of another lot may redeem and be entitled to subrogation; the right of redemption of a third lot may be foreclosed. When a municipality sells a tax sale certificate, it transfers title to the land and to the lien; and such transfer of title is the substance of the transaction. The legislature authorized the sale in order that the municipality might raise funds to defray its expenses. The sale of the divided tract and liens in separate parcels is apt to bring as good a price as if they were sold together. Indeed, a sale in parcels of the 23.15-acre tract would seem to be preferable for through *Page 475 
the property run two state highways, at right angles to each other, cutting the tract into four segments. It appears to me probable that the city, in the matter of the sale to Lodato, acted within its powers. But if the sale was ultra vires, it is Lodato's title that may be jeopardized and he is content. After all, the question is purely legal. While rescission is in rare instances granted because of a mistake of law, it should not be decreed when the law is unsettled.
Complainant also charges that its representatives in the sale to Lodato, and Lodato himself, mistakenly believed that Certificate No. 16486 covered only Lot No. 50 and were unaware that it embraced a much larger tract. The mistake is not sufficient ground for rescission, inasmuch as it does not touch the essence of the transaction which was the sale of Lot No. 50, subject to redemption.
Lastly, it is suggested that the mistake or uncertainty, in the language of the assignment, is sufficient reason for cancellation. Cancellation is appropriate when, by reason of mistake, there was no meeting of the minds of the parties and therefore no agreement has really been made. But reformation is usually the proper remedy when there was, in fact, a valid transaction, but the writing, through mistake, fails to express the actual agreement or transaction. Pom. Eq. Jur. § 70. Where reformation is available and will answer the just needs of complainant, the defendant ought not to be deprived of his bargain and cancellation should be denied. 12 C.J.S. 980.
The assignment may be reformed by amending the description of the property transferred to read as follows: "Such right, title and interest in and to a certain certificate of tax sale, hereinafter described, as conveys the lands and premises known and designated as Block 5088, Lot 50, together with the municipal liens thereon. This assignment does not transfer or affect the title of the said city in and to other lands and premises covered by said certificate of tax sale, or the municipal liens thereon. Said certificate of tax sale is No. 16486, dated June 27th, 1932, owned by said city and recorded," c. Counsel are at liberty to frame a better amendment. *Page 476